# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

DEVIN MARCEL, Individually and on          Civil Action No. 6:20-0773
  behalf of Gary Marcel Estate

versus                                      Judge Michael J Juneau

SHELL OFFSHORE, INC., ET AL.                Magistrate Judge Carol B Whitehurst

## MEMORANDUM RULING AND ORDER

Before the undersigned, on referral from the district judge, is the Motion to Dismiss for Failure to State a Claim [Doc. 20] filed by defendant Zurich American Insurance Company ("Zurich").  The motion is opposed by plaintiff Devin Marcel [Doc. 26], and Zurich filed a Reply brief [Doc. 31].  For the following reasons, the plaintiff's request for leave to amend his complaint will be granted and Zurich's motion to dismiss will be denied without prejudice to its right to reurge its motion in response to plaintiff's amended complaint, if warranted.

## I.  FACTUAL BACKGROUND

The instant lawsuit arises out of the death of Gary Marcel, whose son, Devin, brings the instant lawsuit on behalf of his father's estate.  At the time of his death, Gary Marcel was an employee of Danos, Inc.  On June 30, 2019, Gary was working on the Shell Auger, a tension leg platform located on the Outer Continental Shelf off the coast of Louisiana in the Gulf of Mexico.  Plaintiff alleges that during a lifeboat

safety exercise/test with Lifeboat 6, the cables, hooks, davits, davit systems, or other mechanisms of the lifeboat failed/malfunctioned in several respects, resulting in the lifeboat breaking loose and falling over seventy (70) feet into the Gulf of Mexico. Gary died while en route to receive medical treatment for his injuries in the fall.

Plaintiff's original complaint named three defendants in the following capacities: Shell Offshore, Inc. ("Shell"), as the owner/operator of the platform; Palfinger Marine USA, Inc. ("Palfinger"), as the manufacturer of the lifeboat, its cables, securing hooks, and davits; and Zurich, in its capacity as an insurer of Palfinger.  After Shell filed an answer, and before any other defendant did, plaintiff amended his complaint to add direct negligence claims against Zurich in its capacity as an inspector.  In his amended complaint, the plaintiff alleges that Zurich conducted an inspection or commissioned another party to conduct an inspection on its behalf that uncovered the defective conditions that led to Mr. Marcel's death.

It is these claims that Zurich (as inspector) now seeks to have dismissed.[1] Zurich argues it does not have the capacity to be sued as an inspector, and further argues that the plaintiff has not pled any facts which, even if accepted as true, would establish that Zurich ever acted in such a capacity, that Zurich was ever charged with such a duty, or that Zurich ever voluntarily assumed such a duty.

---

[1] Zurich states that the instant motion is directed only to the plaintiff's claims against it for its own alleged actions and/or inactions.  Zurich seeks no relief with respect to the claims alleged against it in its capacity as an alleged insurer of Palfinger.

## II.    LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the

3

complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## B.  Analysis

As an initial matter, the undersigned notes that the parties have not briefed the issue of what law governs the plaintiff's claims in this matter.  The plaintiff points out that he has brought claims under Louisiana law as surrogate federal law per the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. 1331, *et. seq.*; the general maritime law; and the Longshore and Harbor Workers' Compensation Act. Although the plaintiff argues his claim for negligent inspection/misrepresentation claim falls under Louisiana law – pursuant to OCSLA – he specifically argues that no matter which law applies, he states a claim against Zurich for negligent inspection if Zurich or someone on its behalf conducted an inspection, discovered a defective condition, and did nothing about it to prevent the decedent's fatal injuries.  Zurich appears to assume without argument that the claim for negligent inspection/misrepresentation would fall under Louisiana law, and it is within this context that the instant motion is considered.

In its amended complaint, plaintiff alleges the following with respect to Zurich:

4

- "Lifeboat 6 was . . . being maintained and inspected by defendants, Palfinger Marine USA, Inc. and/or Zurich/Inspector."
- "Defendants, Shell Offshore, Inc., Palfinger Marine USA, Inc., and/or Zurich/Inspector, were responsible for the safe operation of the lifeboat, maintenance and/or inspection of the lifeboat, the safe execution of the lifeboat safety exercise/test, and owed the deceased a general duty to provide a safe working environment. The Defendants were negligent in failing to safely carry out these duties, leading to the death of Gary Marcel."
- "In addition, Defendants, Shell Offshore, Inc. and/or Zurich/Inspector, were negligent in failing to adequately inspect and/or replace the defective securing hooks, cables and davits."
- "Defendants, Shell Offshore, Inc., Palfinger Marine, USA, Inc., and Zurich/Inspector Company, were negligent in failing to provide Gary Marcel adequate lifesaving equipment and safety equipment during the lifeboat safety exercise/test that ultimately resulted in his death."
- "At all times pertinent hereto, Zurich American Insurance Company (Zurich/Inspector), inspected and/or caused to have an inspection done on the lifeboats and cables made at issue herein and upon finding said defects, failed to warn or have the defective cables/boat repaired/replaced."

Plaintiff's claim is premised on the theory that if Zurich inspected the cables, hooks, davits, davit systems, or other mechanisms of the lifeboat, and either determined that such systems were faulty or failed to determine that they were faulty, the plaintiff has a cause of action for direct negligence against Zurich under Louisiana law. The plaintiff alleges that Zurich did indeed perform an inspection, or commissioned another party to conduct an inspection on its behalf. In opposing Zurich's motion to dismiss, plaintiff claims that he "became aware of this possible claim via oral representations, but [p]laintiff has had no opportunity to perform

5

discovery since an answer by Zurich as Palfinger's insurer was just filed on September 25, 2020."  In support of his argument, the plaintiff attaches to his brief what appears to be a printout from the Zurich website, which indicates that Zurich has a "Risk Assessment" Division within the company. Plaintiff alternatively asserts that, rather than dismissing his direct negligence claims against Zurich, the Court should grant plaintiff's request for leave to amend his complaint to state his claims with more particularity.

Zurich argues that the plaintiff has alleged no facts that support his allegations that Zurich actually inspected the lifeboat systems or had a duty to inspect them. With respect to its Risk Assessment Division, Zurich argues that the plaintiff has not specifically alleged that risk assessment services were provided to the lifeboat at issue in this case.  Furthermore, Zurich argues that even if it had inspected the lifeboats at issue, which it denies, it would have done so as an alleged insurer of Palfinger.  Zurich argues that its only connection to this matter is through its capacity as the alleged insurer of Palfinger, that it has answered the suit in that capacity, and that any claims alleged against it directly for its own actions or inactions are not well-founded.

Louisiana law recognizes the tort of negligent misrepresentation, encompassed within Articles 2315 and 2316 of the Louisiana Civil Code.  *See Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1014–15 (La. 1993) ("LSA–C.C. arts.

2315 and 2316 are sufficiently broad to encompass a cause of action for negligent misrepresentation.") (internal citations omitted), *citing Devore v. Hobart Mfg. Co.*, 367 So.2d 836, 839 (La. 1979).  The approach of appellate courts in the negligent misinformation cases has been to integrate the tort doctrine into the duty/risk analysis.  These cases conclude that for the cause of action to arise -- whether plaintiff is a third party or a party to the contract or transaction -- there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage.  *See Cagle v. Loyd,* 617 So.2d 592 (La. App. 3rd Cir. 1993), *writ den.,* 620 So.2d 877 (La.1993); *Pastor v. Lafayette Bldg. Ass'n, supra; Payne v. O'Quinn, supra; Josephs v. Austin, supra; Beal v. Lomas and Nettleton Co., supra; Braydon v. Melancon,* 462 So.2d 262 (La. App. 1st Cir. 1984); *Mills v. Ganucheau,* 416 So.2d 361 (La. App. 4th Cir. 1982).  The Louisiana Supreme Court determined that this case by case employment of the duty/risk analysis is the appropriate standard in this state for determining legal responsibility for negligent misrepresentations.  *Barrie*, 625 So.2d at 1015, *citing Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364 (La.1984).  In *Barrie*, the court explained the application of this legal theory in the context of third-parties and lack of privity of contract:

> More pertinently, in cases where privity of contract is absent but there is communication of the misinformation by the tortfeasor directly to the user or the user's agent, they have also found the user is owed a tort duty. *See Payne v. O'Quinn,* 565 So.2d at 1054 *1016 [where termite

7

inspector delivered a wood destroying insect report to the realtor *representing both* vendor and vendee (under the assumption that the exterminator had no contractual relationship with vendee), held: the exterminator "assumed a duty to insure the information it provided as part of its stated obligation as well as that which it volunteered to provide was correct. Furthermore, that duty encompassed the risk that a prospective purchaser (Payne) would rely upon the misrepresentation provided to the realtor, and suffer the damages sustained."]; *Pastor v. Lafayette Bldg. Ass'n,* 567 So.2d at 796 [where a second mortgagee sued the first mortgagee in connection with the subordination of an additional amount at the time of the sale of the property, held: the first mortgagee had no duty to supply any information to the second mortgagee, a non-client; however, "once it volunteered the information [directly to plaintiff], it assumed a duty to insure that the information volunteered was correct."]; *Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc.,* 525 So.2d at 1162 [when bank wrote to plaintiff, a non-customer, stating clearly that the financial condition of one of the bank's customers to whom it had extended credit was not in jeopardy, held: the bank "*assumed* a duty to insure that the information volunteered was correct"].

In sum, Louisiana's case by case development of the tort of negligent misrepresentation has not been restricted to a set theory. ***It has been broadly used to encompass situations of non-disclosure in fiduciary relationships, to situations of direct disclosure to non-clients***. Adopting one of the common law standards as the sole method for determining liability for this tort is not necessary. The case by case application of the duty/risk analysis, presently employed by our courts, adequately protects the misinformer and the misinformed because the initial inquiry is whether, as a matter of law, a duty is owed to this particular plaintiff to protect him from this particular harm.

625 So. 2d at 1015–16 (emphasis added).

Zurich argues that *Barrie* and the other cases cited by the plaintiff are inapposite because they involved factual scenarios wherein there was no ambiguity as to whether the defendant actually performed an inspection of the alleged faulty

8

device.  Here, Zurich argues the plaintiff has not asserted facts which establish that Zurich actually performed an inspection at all, and that even if it did, it performed an inspection in its capacity as the insurer of Palfinger.

This Court is mindful of its duty to accept all well-pleaded facts as true, and this Court must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).  Upon examining the pleadings, however, the Court agrees that plaintiff has not pled sufficient facts to support its direct negligence claims against Zurich. Rather than dismiss, the Court will grant plaintiff's request for leave to amend his complaint to state its claim more definitely.  *See Hart v. Bayer Corp.* 199 F.3d 239, 247 n. 6 (5th Cir. 2000)(a court should generally avoid dismissing a claim "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."). Zurich will be allowed to reurge its motion after the filing of plaintiff's amended complaint, if such motion is deemed warranted.

### III.   CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that plaintiff's request for leave to amend his complaint is GRANTED. Plaintiff shall file his amended complaint within 10 days of the filing of this Order.

**IT IS FURTHER ORDERED** that the Motion to Dismiss for Failure to State a Claim [Doc. 20] filed by defendant Zurich American Insurance Company ("Zurich") is DENIED without prejudice to its right to reurge its motion in response to plaintiff's amended complaint, if deemed warranted.

**THUS DONE AND SIGNED** this 7th day of January, 2021, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

10